IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| IN RE GALECTIN THERAPEUTICS, INC. DERIVATIVE LITIGATION | CIVIL ACTION NO. 1:15-CV-208-SCJ |

### ORDER

This matter appears before the Court on Galectin Therapeutics, Inc.'s ("Galectin") Motion to Dismiss (Doc. No. [79]) and Peter Traber, Jack W. Callicutt, James C. Czirr, Gilbert F. Amelio, Kevin D. Freeman, Arthur R. Greenberg, Rod D. Martin, John F. Mauldin, Steven Prelack, Herman Paul Pressler, III, Mark Rubin (the "Individual Defendants"), and 10X Fund L.P.'s ("10X Fund") Motion to Dismiss (Doc. No. [80]).[1] Defendants move to dismiss with prejudice the Verified First Consolidated Amended Shareholder Derivative Complaint ("Verified Amended Complaint") for failure to make pre-suit demand on Galectin's board of directors or plead facts excusing demand as required by Federal Rule of Civil Procedure 23.1 and the law of the State of Nevada, and for

---

[1] Individual Defendants and 10X Fund "join in, adopt, and incorporate the arguments set forth in [Galectin's] Motion to Dismiss the Verified Consolidated Amended Shareholder Derivative Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 and Nevada law as if fully set forth [therein]." Doc. No. [80], p. 2.

failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 9(b).

## I. PROCEDURAL BACKGROUND AND SUMMARY OF ALLEGATIONS[2]

On August 1, 2014, David L. Hasbrouck, derivatively on behalf of Galectin, filed a Complaint in the United States District Court for the District of Nevada against the Individual Defendants and Galectin alleging breach of fiduciary duties, unjust enrichment, waste of corporate assets, and aiding and abetting fiduciary violations. Doc. No. [1]. On September 3, 2014, Galectin, Czirr, Traber, and Callicutt filed an unopposed motion in a related securities class action with the United States District Court for the District of Nevada to transfer venue to the United States District Court for the Northern District of Georgia. On September 29, 2014, Galectin, Traber, Czirr, Callicutt, Martin, Mauldin, Amelio, Freeman, Greenberg, Prelack, Pressler, and Rubin, defendants in the derivative action, filed

---

[2] "In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). While the Court accepts the factual allegations as true and construes them in the light most favorable to Plaintiff, securities fraud claims are subject to heightened pleadings standards that must be met to survive a motion to dismiss. In re AIG Advisor Group Securities Litigation, 309 F. App'x 495, 497 (2nd Cir. 2009). Plaintiff must plead with particularity the circumstances constituting fraud. Id.

a second unopposed motion to transfer venue to the United States District Court for the Northern District of Georgia. Doc. No. [38]. The United States District Court for the District of Nevada granted the motions and transferred venue to the United States District Court for the Northern District of Georgia on January 5, 2015. Doc. No. [44]. On February 27, 2015, Hasbrouck and Sui Yip, derivatively on behalf of Galectin, filed a Verified Consolidated Shareholder Derivative Complaint against certain current and former officers and directors of the company. Doc. No. [58]. On May 26, 2015, Harsbrouck and Yip filed the Verified Amended Complaint alleging violations of the Securities Exchange Act of 1934 ("Exchange Act") and laws of the State of Nevada. Doc. No. [74].

Hasbrouck is a current shareholder of Galectin and has continuously held Galectin stock since 2003, when the company was known as Pro-Pharmaceuticals. Doc. No. [74], p. 11, ¶ 18. Yip is a current shareholder of Galectin and has continuously held Galectin stock since February 2007, when the company was known as Pro-Pharmaceuticals. Doc. No. [74], p. 11, ¶ 19. Incorporated in the State of Nevada and headquartered in Norcross, Georgia, Galectin is a biotechnology company engaged in the research of galectin proteins to develop therapies for cancer and non-alcoholic steatohepatitis ("NASH"), or

fatty liver disease with advanced fibrosis. Doc. No. [74], p. 3, ¶¶ 2-3; Doc. No. [74], p. 11, ¶ 20; Doc. No. [74], pp. 19-20, ¶ 39. The Individual Defendants comprise the management team of Galectin — *e.g.*, Chief Executive Officer, Chief Medical Officer, and Chief Financial Officer — and members of Galectin's board of directors. Doc. No. [74], pp. 12-17, ¶¶ 21-31. 10X Fund and its general partner, 10X Capital Management, LLC, were co-founded by Czirr and Martin in 2008 as a technology-focused hedge fund headquartered in Niceville, Florida. Doc. No. [74], p. 17, ¶ 32. As of March 20, 2015, 10X Fund owned all of the issued and outstanding shares of Galectin Series B preferred stock, as well as warrants exercisable to purchase additional common stock. Doc. No. [74], p. 17, ¶ 32. Czirr was a managing partner of 10X Fund and served as Executive Chairman of Galectin's Board of Directors during the class period. Doc. No. [74], pp. 12-13, ¶ 22. Martin was also a managing partner of 10X Fund and served as Vice Chairman of Galectin's Board of Directors during the time period pertinent to this matter. Doc. No. [74], p. 15, ¶ 27.

Plaintiffs include six substantive counts in the Verified Amended Complaint.[3] In Count I, Plaintiffs allege that Individual Defendants violated

---

[3] The Verified Amended Complaint is a quintessential shotgun pleading. The United States Court of Appeals for the Eleventh Circuit defines shotgun pleadings as "those that

Section 14(a) of the Exhange Act and Rule 14a-9 promulgated thereunder by failing to disclose in Galectin's 2013 and 2014 Proxy Statements that they had caused the company to enter into a secret stock promotion scheme. Doc. No. [74], pp. 150-52, ¶¶ 311-18. In Count II, Plaintiffs allege that Individual Defendants breached their fiduciary duties by failing to disclose material information concerning Galectin, namely the secret stock promotion scheme. Doc. No. [74], pp. 152-54, ¶¶ 320-27. In Count III, Plaintiffs allege that Czirr, Martin, and Prelack breached their fiduciary duties by selling Galectin stock while in possession of material non-public information. Doc. No. [74], pp. 154-56, ¶¶ 328-34. In Count IV, Plaintiffs allege that Individual Defendants were unjustly enriched due to the compensation they received while in breach of their fiduciary duties. Doc. No. [74], pp. 156-57, ¶¶ 335-40. In Count V, Plaintiffs allege that Individual Defendants wasted corporate assets through improper payments to officers of Galectin, awarding stock options to officers and directors of Galectin, paying third party stock promoters, and potentially incurring substantial legal liability and legal costs. Doc. No. [74], pp. 157-58,

---

incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." <u>Wagner v. First Horizon Pharm. Corp.</u>, 464 F.3d 1273, 1279 (11th Cir. 2006). "'[S]hotgun pleadings wreak havoc on the judicial system.'" <u>Id.</u>

5

¶¶ 341–45. In Count VI, Plaintiffs allege that Individual Defendants and 10X Fund aided and abetted in the alleged breaches of fiduciary duties. Doc. No. [74], pp. 158–59, ¶¶ 346–52.

On July 8, 2015, Galectin filed a Motion to Dismiss (Doc. No. [79]) and Individual Defendants and 10X Fund filed a Motion to Dismiss (Doc. No. [80]). The parties have briefed the motions and the Court heard oral argument with respect to the motions on November 3, 2015 (Doc. No. [88]). The motions are now ripe for consideration by the Court.

## II. LEGAL STANDARD

Under the law of the State of Nevada, "a corporation's 'board of directors has full control over the affairs of the corporation.'" Schoen v. SAC Holding Corp., 137 P.3d 1171, 1178 (Nev. 2006). The power conferred upon the board of directors to act on behalf of the corporation "is governed by the directors' fiduciary relationship with the corporation and its shareholders, which imparts upon the directors duties of care and loyalty." Id. "In essence, the duty of care consists of an obligation to act on an informed basis; the duty of loyalty requires the board and its directors to maintain, in good faith, the corporation's and its shareholders' best interests over anyone else's interests." Id. Directors of a

6

corporation are protected by the business judgment rule, which is "a 'presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Id. at 1178–79. While the board of directors generally decides whether to pursue legal action on behalf of the corporation, shareholders, through what is known as a derivative suit, may file a lawsuit to enforce the corporation's rights. Id. at 1179. To be permitted to file a derivative suit, a shareholder must set forth particularized factual statements that are essential to the claim that demand has been made on the corporation that it pursue the claim that the shareholder seeks to pursue, or, alternatively, that making a demand on the corporation would be futile. Id. at 1179–80; see also Fed. R. Civ. P. 23.1. "A shareholder's failure to sufficiently plead compliance with the demand requirement deprives the shareholder of standing and justifies dismissal of the complaint for failure to state a claim upon which relief may be granted." Schoen, 137 P.3d at 1180.

The Supreme Court of Nevada has adopted a two-prong analysis to determine whether demand would be futile.

> [W]hen a shareholder's demand would be made to the
> same board that voted to take (or reject) an action, so

> that the allegedly improper action constitutes a business decision by the board, a shareholder asserting demand futility must allege, with particularity, facts that raise a reasonable doubt as to the directors' independence or their entitlement to protection under the business judgment rule. However, when a board does not affirmatively make a business decision or agree to the subject action, the demand requirement will be excused as futile only when particularized pleadings show that at least fifty percent of the directors considering the demand for corrective action would be unable to act impartially.

Id. at 1175. The first prong concerns business decisions by the board of directors.

With respect to the first prong,

> a plaintiff challenging a business decision and asserting demand futility must sufficiently show that either the board is incapable of invoking the business judgment rule's protections (*e.g.*, because the directors are financially or otherwise interested in the challenged transaction) or, if the board is capable of invoking the business judgment rule's protections, that that rule is not likely to in fact protect the decision (*i.e.*, because there exists a possibility of overcoming the business judgment rule's presumptions that the requisite due care was taken when the business decision was made).

Id. at 1181. The second prong concerns actions by the corporation to which the business judgment rule does not apply, "for example, when the board members who decided the challenged act have since changed or when the challenged act

does not constitute a decision by the board." Id. at 1182. With respect to the second prong, "'the demand futility analysis considers only whether a majority of the directors had a disqualifying interest in the [demand] matter or were otherwise unable to act independently' at the time the complaint was filed." Id. at 1183. "To show interestedness, a shareholder must allege that a majority of the board members would be 'materially affected, either to [their] benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders.'" Id. The Supreme Court of Nevada noted, "[a]llegations of mere threats of liability through approval of the wrongdoing or other participation, however, do not show sufficient interestedness to excuse the demand requirement." Id.

### III. DISCUSSION

#### A. Issue Preclusion

In cased governed by the law of the State of Nevada, "issue preclusion 'applies to prevent relitigation of [] a specific issue that was decided in a previous suit between the parties, even if the second suit is based on different causes of

action and different circumstances.'" Arduini v. Hart, 774 F.3d 622, 629 (9th Cir. 2014). For issue preclusion to apply,

> "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; . . . (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation"; and (4) the issue was actually and necessarily litigated.

Id. Plaintiffs argue that issue preclusion applies in this matter with respect to demand futility. Specifically, Plaintiffs argue that Judge Elizabeth Gonzalez of the District Court of Clark County, Nevada, denied a substantially similar motion to dismiss filed by Galectin in a parallel, later-filed derivative action before Judge Gonzalez, thereby warranting a finding of issue preclusion. However, based on the Court's review of the state court action, there is not a sufficient basis for the Court to find that Judge Gonzalez issued a final ruling on the merits with respect to the identical issue of demand futility presently before the Court.

In the state court action, with respect to a motion to dismiss filed by Galectin on the basis of demand futility, Judge Gonzalez stated the following:

> The motion to dismiss is denied. The allegations related to the conflicted directors who may face personal liability are not the best I've ever seen, but

10

> they are not enough to merit dismissal at this point. Given the fact I'm already going to deal with some pleading issues in a different fashion in a minute, is there anything else?

Doc. No. [79-4], p. 25. While Judge Gonzalez denied the motion to dismiss, she then directed the plaintiffs to file a motion to amend the complaint, and advised the plaintiffs, "you may want to beef up your factual allegations." Doc. No. [79-4], p. 25. Judge Gonzalez also stayed the case for 180 days pending action by the Court in this matter. Doc. No. [79-4], p. 26; Doc. No. [81-1]. Review of the transcript (Doc. No. [79-4]) and subsequent order prepared by the parties (Doc. No. [81-1]) does not indicate whether Judge Gonzalez denied the motion to dismiss based on the merits of the case or mootness. Neither does the state court's journal entry following the hearing resolve the uncertainty regarding the basis for denying the motion to dismiss. See Doc. No. [81-2]. The Court cannot conclude whether Judge Gonzalez issued a final ruling on the merits with respect to the issue of demand futility. Because it is unclear whether issue preclusion applies, the Court is not precluded from considering demand futility.

### B. Demand Futility

Plaintiffs contend that they have adequately alleged that demand is excused because each board member faces a substantial likelihood of liability for failing to disclose a secret stock promotion scheme. Doc. No. [74], pp. 138–42,

11

¶¶ 373–81; Doc. No. [81], pp. 31–36. Specifically, Plaintiffs state, "The entire Board is . . . interested because each director faces a substantial likelihood of liability for failing to disclose that Galectin engaged the Stock Promoters and was paying the Stock Promoters to author and publish 'articles' promoting Galectin's financial prospects." Doc. No. [81], p. 32. Plaintiffs rely on the second prong of the demand futility analysis by claiming that a majority of the board members are interested through potential liability. As noted above, the Supreme Court of Nevada has held that it is difficult to establish interestedness through potential liability. Schoen, 137 P.3d at 1183–84.

> [T]o show interestedness, a shareholder must allege that a majority of the board members would be "materially affected, either to [their] benefit or detriment, by a decision of the board, in a manner not shared by the corporation and the stockholders." Allegations of mere threats of liability through approval of the wrongdoing or other participation, however, do now show sufficient interestedness to excuse the demand requirement. Instead, as the Delaware courts have indicated, interestedness because of potential liability can be shown in those "rare case[s] . . . where defendants' actions were so egregious that a substantial likelihood of director liability exists."
>
> With regard to the duty of care, the business judgment rule does not protect the gross negligence of uninformed directors and officers. And directors and officers may only be found personally liable for

>breaching their fiduciary duty of loyalty if that breach involves intentional misconduct, fraud, or a knowing violation of the law. Accordingly, interestedness through potential liability is a difficult threshold to meet.

Id. In this case, Plaintiffs have not set forth allegations that establish interestedness through a substantial likelihood of director liability.

The Court ruled in a related securities class action that Galectin and members of its board of directors did not engage in illegal or impermissible conduct through the use of third party stock promoters. See In re Galectin Therapeutics, Inc. Securities Litigation, Case No. 1:15-CV-29-SCJ, Doc. No. [130] (N.D. Ga. Dec. 30, 2015). The Court held that the third party stock promoters were required to disclose that they received compensation for the articles they disseminated, not the company and its board of directors. Id. While Plaintiffs rely on In re Galena Biopharma, Inc. Derivative Litigation, 83 F. Supp. 3d 1047 (D. Ore. 2015) to distinguish this derivative suit from the related securities class action, that reliance is misplaced. In Re Galena is not binding authority and this Court does not find the district court's reasoning persuasive. In the present matter, Plaintiffs have not identified any failure to disclose by the board of directors that constitutes a breach of a fiduciary duty. In addition, other than noting a relationship between Mauldin and one of the stock promoters, Plaintiffs

AO 72A
(Rev.8/82)

have not set forth particularized factual allegations regarding the specific conduct of each of the individual members of the board of directors. Therefore, the Court concludes that Plaintiffs have not set forth particularized allegations that each member of Gaelectin's board of directors faces a substantial likelihood of liability for failing to disclose a stock promotion scheme.

Plaintiffs also contend that they have adequately alleged that demand is excused because a majority of the members of the board of directors face a substantial likelihood of liability for insider selling. Doc. No. [74], p. 138, ¶¶ 271-72; Doc. No. [81], pp. 36-39. The board is comprised of ten members, including both inside and outside directors. However, Plaintiffs allege insider selling against only three members of the board of directors — Czirr, Martin, and Prelack. Even assuming that Czirr, Martin, and Prelack face a substantial likelihood of liability for insider selling, Plaintiffs are able to establish that only a minority of the board is interested, which is not sufficient under the law of the State of Nevada. Therefore, the Court concludes that Plaintiffs have not set forth particularized allegations that a majority of the board of directors face a substantial likelihood of liability for insider selling.

"A shareholder's failure to sufficiently plead compliance with the demand requirement deprives the shareholder of standing and justifies dismissal of the complaint for failure to state a claim upon which relief may be granted." Schoen, 137 P.3d at 1180. Because Plaintiffs have failed to plead demand futility, they

have not pleaded compliance with the demand requirement to pursue a derivative lawsuit on behalf of Gaelectin. The Court concludes that dismissal of this action is justified.

### C. Leave to Amend

Federal Rule of Civil Procedure 15(a)(1) provides that a party may amend its pleading once as a matter of course within either twenty-one days after serving it, or twenty-one days after service of a required responsive pleading or motion filed under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). After this twenty-one-day period has passed, a party may amend its pleading only with the opposing party's written consent or the court's leave, which the court "should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Court of Appeals for the Eleventh Circuit has held:

> The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Nevertheless, a motion for leave to amend may appropriately be denied "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendments would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001).

In re Engle Cases, 767 F.3d 1082, 1108–09 (11th Cir. 2014).

It has been held that "[l]eave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007); see also Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004) ("This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.") The Eleventh Circuit has also held, "'Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.'" Rosenberg, 554 F.3d 962, 967 (2009). In this case, Plaintiffs have not raised the issue of amendment in the pleadings. Plaintiffs only raised the issue of amendment during oral argument, and not specifically with respect to the derivative lawsuit. Further, even if Plaintiffs properly raised a request for leave to amend, the Court finds that leave to amend the complaint is futile. The operative complaint is an amended complaint filed by Plaintiffs upon transfer of this matter to this Court.

## IV. CONCLUSION

Galectin's Motion to Dismiss (Doc. No. [79]) is **GRANTED**, and the Individual Defendants and 10X Fund's Motion to Dismiss (Doc. No. [80]) is

**GRANTED.** This matter is hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED,** this 30TH day of December, 2015.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE